TAYLOR, APPELLEE, *v.* ROBISHAW ET AL., APPELLANTS.
(Two cases.)

(Nos. 509 and 510—Decided June 10, 1954.)

Mr. *Howard M. Nazor* and *Messrs. Payer, Bleiweiss, Crow & Mollison,* for appellees.

Mr. *Harry Wagner* and *Messrs. Keep & Scholz,* for appellants.

GRIFFITH, P. J. These two suits, on appeal on questions of law and fact from the Common Pleas Court of Ashtabula County, are for the specific performance of separate contracts and have been consolidated for the purpose of trial, since they arise out of the same set of facts. One suit, by Daisy Taylor, seeks to require the heirs at law of Jennie May Merrill to specifically perform an oral contract evidenced by a written instrument, and the other suit, by Ray H. Taylor, is of like tenor against the same defendants.

The plaintiffs are mother and son. The facts of these two cases are all-important. The law applicable thereto is plain and in no wise complicated.

Jennie May Merrill, in the spring of 1947, was past 70 years of age. She had been ill and under Dr. Faus's care the previous winter. That winter, she resided with her aged sister in Wellington. The doctor treated her for shingles. She was a widow, her husband having died in 1941. Following his death, she remained on the homestead farm until she went to reside with her sister, Ida Lowrey, that winter in Wellington.

She was the owner of two farms, one the homestead farm of 130 acres, and the other a 40-acre farm on Jones Road, both farms being located in Brighton Township, Lorain County, Ohio, about 12 miles from Wellington.

That winter, she advertised for tenants to move onto her farm. The two Taylors, Ray and his mother, Daisy, who were total strangers to Mrs. Merrill, applied in response to the advertisement and entered into a memorandum of lease. The lease memorandum was in the handwriting of Ray H. Taylor and was signed by himself and Mrs. Merrill and none other.

The memorandum reads as follows:

"This farm is to be leased for five years. This farm is located 1½ miles north of Brighton on route 511 on west side of road, 130 acres. Lessee is to do all labor; lessor is to furnish all material; lessee is to get the first years rent free; and after that lessee is to pay four dollars per acre for period of four years according to price; and then to have first chance to buy this farm regardless.

"Ray H. Taylor
"Mrs. May Merrill."

Following the execution of the lease, the Taylors went into possession on or about April 1, 1947. While

the written lease was made only to and signed only by Ray H. Taylor, his wife, Dora, his parents, Daisy and Witsell Taylor, and his younger brothers and sisters all moved onto and occupied the 130-acre farm.

In the latter part of April, Mrs. Merrill moved back to the farm, living with the Taylors under some understanding with them and occupying a room in the house and having her meals with the family. Just what that arrangement was is in dispute, but there is some evidence that it was Mrs. Merrill's intention to live in the farm house with the tenants and eat at their table.

The writing discloses that no reservation of any room or any provision for Mrs. Merrill's care and keep were set out in this meager memorandum. When she returned to the farm in the latter part of April 1947, Mrs. Merrill was a sick old lady. She had a running sore on one leg; needed assistance during the nights; was suffering from so severe an attack of shingles that part of her scalp was removed; and was in a terribly weakened condition.

On August 15, 1947, the day before she entered the Lodi Hospital and while in the bedroom off the kitchen in the farm house, in the presence of Dora Taylor and Ray Taylor, with Daisy and Witsell Taylor in the kitchen, she wrote, with some difficulty due to physical weakness, the following memorandum:

"I want Ray and mother Taylor to have my farms for taking care me.

"May Merrill."

Regarding the execution of this memorandum, Mr. Witsell Taylor testified:

"Q. Did you hear any conversation or statement or talk by Jennie May Merrill immediately before that was written? Just answer the question yes or no. A. Yes, I heard some talk.

"Q. What, if anything, did you hear said? A. Well, I heard Ray say to May—he was talking about this

farm deal, you know, that she was going to deed it to him—and he said to her, he says, 'I don't have anything to show that you are going to deed me this farm,' and he says, 'I am liable to get kicked around by the Lowreys or somebody,' and she says to him, she says, 'I'll fix that.'

"Q. Was that—when she said, 'I'll fix that,' is that when she commenced to write the memorandum? A. That's right.

"Q. How soon after the memorandum was written did you see it? A. Well, Ray read it when she handed it to him.

"Q. No, the question is how soon did you, yourself, see it? A. And he come out with it and I was right there in the kitchen and he handed it to me and he said, 'this is what May give me.' I said 'observe it.' "

Mrs. Merrill remained in the hospital until August 30, 1947, at which time she returned to the farm. On September 16, 1947, in her own handwriting, she executed the following:

"September 16, 1947

"I want Ray to have this farm and what in house for take care my business.

"May Merrill.

"Give to Wagner."

Also, the following:

"I want mother Taylor to have my farm on Jones Road.

"M. Merrill."

On September 17, 1947, May Merrill died of toxic pneumonia. Following the funeral, the defendants, or at least some of them, assembled at the farm. There is testimony that at that time Ray Taylor asked the defendant, Lee Robishaw, one of the heirs, "for the first chance to buy the farm."

This request was consistent with the terms of the lease. This testimony is denied by the Taylors. There

is testimony that after the administrator was appointed the Taylors contacted him relative to obtaining funds from the estate for the payment of fencing on the farm.

On January 19, 1948, the plaintiffs presented to the administrator separate claims against the estate of May Merrill, deceased, one of $10,000 for Ray, and one of $3,000 for Daisy for personal services rendered. The administrator rejected these claims and two separate suits were commenced on March 17, 1948, against the administrator in Lorain County Court of Common Pleas, that being the same date that these two suits were filed in the Court of Common Pleas of Ashtabula County asking for specific performance.

We believe the lease, coupled with occupancy by Ray Taylor, was a valid lease to Ray Taylor under the terms contained therein for a period of three years.

The first memorandum of August 15, which reads, "I want Ray and mother Taylor to have my farms for taking care me," was executed by this old lady on the day before she entered the hospital and while she was suffering from pneumonia; it was written in the presence of the Taylors only, without a single outside witness. Is it likely that one of her age and condition would be making provisions for her care and keep for the rest of her life on the eve of her leaving her homestead farm and entering a hospital?

Two of the Taylors were in the bedroom, two others were in the kitchen next to the bedroom, and no one else was around. She had a lawyer by the name of Wagner in Wellington at the time, and she said in the second memorandum, "give to Wagner." Did she not have in mind his counsel or advice or approval?

Likewise, the second memorandum that she wrote the day before her death was executed in the presence of Ray and Dora Taylor, and no one else.

The testimony of Ray Taylor and Dora Taylor should be closely scanned and tested by its own probability or improbability. The memoranda of August 15 and September 16 have the earmarks of undue influence exercised upon this feeble old lady for the following reasons:

1. As to the first memorandum, Ray requested it of her.

2. There is no witness to it except the four Taylors.

3. It is not probable, by ordinary rules of human conduct under circumstances present in the case, that she freely and understandingly made such a memorandum.

4. As to the second memorandum made the day before her death, again only in the presence of the Taylors, we feel that the facts justify the conclusion that either undue influence was exercised upon her or at least it was not a deliberate judgment on her part and was, therefore, invalid under the law.

Dr. Faus, Mrs. Merrill's doctor during the six-month period before her death and one of the plaintiffs' own witnesses, said he had been treating Mrs. Merrill both mentally and physically in 1947; that he would sooth her and quiet her down; and that she was eccentric.

She leased the homestead farm to Ray and never cancelled it and her clauses in the two memoranda are consistent with the clause in the lease that Ray was to have the first chance to buy the farm.

She was suffering from pneumonia on August 15, the day before she entered the hospital, and she died of pneumonia September 17. It is quite apparent that in the interim of only one month, her physical and mental capacities were seriously impaired. This all transpired while the Taylors were occupying the homestead farm under the terms of a lease written by Ray Taylor in his own hand.

The conduct of Ray Taylor and Daisy Taylor following Mrs. Merrill's death is wholly inconsistent with their instant claims for specific performance. In the claims against her estate filed in Lorain County, they prayed for a money judgment only, for services rendered.

In Ray Taylor's case, he says, "plaintiff provided for her; devoted himself to the management and care of her properties; provided assistance to her in banking matters; caused her to be transported to and from the office of her physician and otherwise provided for her companionship, care and attention."

In Daisy Taylor's case, she said in her petition, "the plaintiff, pursuant to said understanding, devoted herself to providing and rendering nursing and other care and attention to the decedent; in ministering to her needs during her illness and in providing comfort and companionship."

Ray claims his services were worth $10,000, and Daisy makes claim for $3,000. At the time these two claims were filed against the estate it is apparent that the Taylors did not recognize the oral contract sued upon in this case. Later, suit was instituted on each of the claims for money only in Lorain County and on the same day the two suits in this case were instituted in Ashtabula County for specific performance.

The circumstances surrounding the execution of these oral contracts, evidenced, at least in part, by the written memoranda of August 15 and September 16, require this court to look upon such evidence in support of the contracts in a scrupulous manner. Such contracts can be enforced only when they are clearly proved by positive testimony, and the interests of the witnesses in the outcome of the case may be considered.

One of the parties to this lease and to these alleged contracts, which are the bases of these two suits, is

dead, and she is unable to give her understanding of the matter. Therefore, unless the evidence in support of the contracts is clear and convincing, and its terms definite and certain, the contract fails.

In view of the whole record, our conclusion is that Jennie May Merrill did not have sufficient mental and physical capacity to execute the memoranda of August 15, 1947, and September 16, 1947; that the making of such memoranda was brought about through undue influence; that she did not exercise a deliberate judgment in the execution of the same; that, since the memoranda are of no legal effect, the plaintiffs' cases fail by reason of the statute of frauds (Section 1335. 04, Revised Code); and that the prayer of the petitions should be denied and judgments entered for the defendants.

*Judgments for defendants.*

PHILLIPS and NICHOLS, JJ., concur.